UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM CHARON,

    Plaintiff,                                    Hon. Paul L. Maloney

v.                                                 Case No. 1:17-cv-1124

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 43 years of age on his alleged disability onset date. (PageID.278). He successfully completed high school and worked previously as a truck driver, security guard, and auto detailer. (PageID.73). Plaintiff applied for benefits on October 16, 2014, alleging that he had been disabled since July 1, 2012, due to headaches, bulging disc, lumbar spine impairment, severe back pain, osteoarthritis, left knee impairment, right knee impairment, and vertigo. (PageID.278-87, 302).

Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.134-275). On August 1, 2016, Plaintiff appeared before ALJ Michael Condon, with testimony being offered by Plaintiff and a vocational expert. (PageID.80-133) In a written decision dated September 19, 2016, the ALJ determined that Plaintiff was not disabled. (PageID.61-75). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.42-46). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease of the lumbar spine; (2) congenital fusion of the thoracic spine; (3) degenerative joint disease of the left shoulder status post two arthroscopic surgeries; (4) degenerative joint disease and patellofemoral arthritis of the bilateral knees; (5) obesity; (6) headaches; and (7) vertigo, severe impairments that whether considered alone or in combination with other impairments, failed to

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.63-65).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) he can occasionally reach overhead with his left upper extremity; (3) he cannot operate leg or foot controls with either lower extremity; (4) during an 8-hour workday, he can sit for 6 hours and stand/walk for 4 hours; (5) he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; (6) he can never climb ladders, ropes, or scaffolds; (7) he can experience only occasional exposure to temperature extremes, humidity, wetness, and vibration; (8) he can have no exposure to workplace hazards, including unprotected heights and dangerous moving machinery; and (9) he cannot operate motorized vehicles. (PageID.65-66).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there

exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 70,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.121-28). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

I.      **Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained almost 300 pages of medical treatment records and statements by Plaintiff. The ALJ described this evidence as follows:

> The claimant is a forty-seven year old man who was forty-three years old on his alleged onset date. He lives in a house with his wife and young daughter (See, e.g., Ex. B3E/1; B11E/1). The claimant alleges disability resulting from degenerative disc disease of the lumbar spine, osteoarthritis, left shoulder pain, bilateral knee pain, migraine headaches, and vertigo (Ex. B2E; B9E; B11E). He further asserts that these conditions limit his abilities to lift, carry, reach, use his left arm, drive, sit, stand, walk, climb stairs, balance, bend, squat, kneel, twist, turn, see, concentrate, remember, complete tasks, get along with others, and leave his home (Ex. B3E; B11E).
> 
> The record establishes the claimant's history of treatment for symptoms of left shoulder pain and left knee pain (See Ex. B1A). The claimant underwent left shoulder arthroscopic surgery with posterior capsulorrhaphy in 2008 and left shoulder decompression surgery in 2010 (See, e.g., Ex.B1A/9; B1F/34).
> 
> In May 2012, two months prior to the claimant's alleged onset date, primary care provider Eric Stansby, M.D., noted his history of arthritis (Ex. B7F/3). However, the record does not suggest that the claimant pursued any further direct treatment to address symptoms of musculoskeletal pain until June 2013, a period of nearly one full year after his alleged onset date.

In June 2013, the claimant presented to the emergency department after falling out of the bed of a truck and hitting the back of his head on pavement. The claimant reported experiencing intermittent shooting pain from his left shoulder to the left side of his neck. Physician assistant Gregory Niedzwiecki observed that the claimant exhibited an obese body mass index of 33.0, spinous process tenderness, and left shoulder tenderness. However, Mr. Niedzwiecki also noted that the claimant retained normal range of motion of the left shoulder, normal findings in the thoracic and lumbar spinal areas, and normal neurological findings. A CT scan of the claimant's cervical spine showed normal results. Additionally, x-rays of the claimant's left shoulder showed satisfactory alignment with no evidence of fracture. After reviewing these results, Mr. Niedzwiecki assessed the claimant with a cervical strain and a left shoulder strain (Ex. B1F/3, 21, 23). Following this emergency department visit, the claimant did not pursue any further direct treatment to address symptoms of musculoskeletal pain until February 2014, a period of approximately eight months.

In February 2014, the claimant presented to Dr. Stansby complaining of left knee pain (Ex.B6F/9). A March 2014 MRI of the claimant's left knee revealed (i) a small-to-moderate joint effusion; and (ii) a cartilaginous injury involving the articular cartilage of the femoral condyles indicative of a possible subacute osteochondral defect; but (iii) no other evidence for internal derangement (Ex. B1F/30; B7F/8). From April 2014 through July 2014, the claimant attended a course of physical therapy to address his symptoms of left knee pain (Ex. B2F; B6F; B7F). At intake, physical therapist Raymond Shippey noted that the claimant exhibited left quadriceps atrophy, mild tautness of the left medial lateral hamstrings, mild crepitus of the left patellofemoral joint, and a mildly positive patellar grind test. However, Mr. Shippey also observed that the claimant retained a normal gait with normal range of motion of the left lower extremity, negative anterior and posterior drawer tests, negative Lachman's testing, negative pivot shift testing, and negative varus and valgus stress testing (Ex. B2F/16; B7F/26).

In June 2014, the claimant returned to Dr. Stansby complaining of persistent back pain and occasional left knee pain (Ex. B6F/5-6). Subsequent x-rays of the claimant's lumbar spine revealed (i) a congenital interbody fusion from T10 through T12, and (ii) a prominent asymmetric left-sided transverse process of the L5 vertebral segment articulating at the sacrum, but showed (iii) no other significant abnormalities (Ex. B1F/54). At discharge from his physical therapy in July 2014, it was noted that the claimant was

continuing to experience symptoms of left knee pain (Ex. B2F; B6F; B7F).

An August 2014 MRI of the claimant's lumbar spine confirmed (i) mild-to-moderate degenerative changes at the facet joint levels throughout the lumbar spine; (ii) L4-5 lateral disc extrusion contacting and possibly irritating the L4 nerve root; and (iii) congenital interbody fusion of T11-12; but (iv) widely patent canal, recesses, and other neural foraminal levels; with (v) no abnormal prevertebral, paravertebral, or interval soft tissue changes (Ex. B1F/57; B3F; B7F/6). After reviewing these results later that month, Dr. Stansby assessed the claimant with arthritis and knee pain (Ex. B7F/2). In October 2014, Dr. Stansby also assessed the claimant with lumbar degenerative disc disease and a thoracic spine fusion (Ex. B7F /2).

In August 2015, the claimant presented to primary care provider Sheila Gendich, M.D., complaining of increasing neck pain. Dr. Gendich noted that the claimant demonstrated decreased range of motion of the neck (Ex. B10F/4). Later that month, the claimant was referred for a course of physical therapy to address his reported symptoms of neck pain (Ex. B10F/2). However, the record does not suggest that the claimant attended this physical therapy after his initial evaluation.

Dr. Stansby and Dr. Gendich have continued to monitor the claimant's symptoms of low back pain and bilateral knee pain while providing him with medication refills at follow-up appointments through at least April 2016. Notably, Dr. Stansby and Dr. Gendich have repeatedly offered minimal to no narrative explanation or clinical examination findings to explain their treatment of the claimant at their appointments (Ex. B6F; B7F; B10F; see also Ex. B14F).

The claimant has reported taking Norco and tramadol to treat his symptoms of pain. At his August 2016 hearing, the claimant testified that these medications help somewhat but do not completely relieve his symptoms of pain. He has also indicated that these medications cause side effects of drowsiness (See Ex. B2E/5; B6E/3; B10E; B12F; B15F). In regard to his symptoms of shoulder pain, the claimant testified that his dominant right shoulder is asymptomatic, but that his left shoulder has continued to bother him. Notably, the claimant also testified that he is capable of lifting his forty-pound daughter, but that he would not be able lift such weight on a repetitive basis. As for his symptoms of knee pain, the claimant testified that he wears a left knee brace five to ten times per month.

However, the claimant also testified that he has not pursued or undergone surgery to address his knee symptomatology.

The claimant has also reported experiencing headaches and vertigo. In May 2012, two months prior to his alleged onset date, the claimant told Dr. Stans by that he had "vertigo (that) comes and goes" (Ex. B7F/3). Nevertheless, a May 2012 CT scan of the claimant's brain revealed normal findings (Ex. B1F/2; B7F/10). Following this imaging study, the record does not suggest that the claimant pursued any further direct treatment to address symptoms of headaches or vertigo until June 2013, a period of nearly one full year after his alleged onset date in July 2012.

When the claimant presented to the emergency department after falling out of the bed of a truck and hitting the back of his head on pavement in June 2013, he reported losing consciousness for approximately one minute and experiencing intermittent dizziness since. Despite these complaints, Mr. Niedzwiecki observed that the claimant presented as alert and oriented with normal behavior and normal neurological findings. A CT scan of the claimant's brain demonstrated normal findings. As noted above, a CT scan of the claimant's cervical spine also showed normal findings. After reviewing these results, Mr. Niedzwiecki assessed the claimant with an acute head injury (Ex. B1F/3, 22-23; Bl 7F/5). At a June 2013 follow-up appointment, the claimant told Dr. Stansby that he was still experiencing symptoms of dizziness. Dr. Stansby assessed the claimant with post-concussion syndrome (Ex. B7F/3). Once again, though, the record does not suggest that the claimant pursued any further direct treatment for symptoms of headaches or vertigo until March 2014, a period of approximately nine months.

In March 2014, the claimant presented to the emergency department complaining of intermittent dizziness with associated chest pain and nausea for the previous day. Dana Houghton, M.D., noted that the claimant presented as alert and oriented with normal behavior, normal coordination, negative Dix-Hallpike testing, and no apparent neurological deficits. A CT scan of the claimant's brain showed normal findings. Additionally, a CT angiogram of the claimant's head and neck showed no evidence of intracranial aneurysm, AVM, or venous thrombosis. After reviewing these results, Dr. Houghton assessed the claimant with benign paroxysmal positional vertigo, and she advised the claimant to pursue outpatient treatment with a Dr. Johnson for further evaluation (Ex. B1F/33-44; Bl 7F/5, 8). The record does not suggest that the claimant followed through with this recommended treatment, or that he pursued any further direct treatment to address symptoms of headaches or vertigo until November 2014, a period of approximately eight months.

> In November 2014, Dr. Stansby provided the claimant with a prescription for Valium to use as needed to address his symptoms of vertigo (Ex. B7F/l). Since being provided with this prescription, the record does not suggest that the claimant has pursued any further direct treatment to address symptoms of headaches or vertigo, a period of nearly two full years. Indeed, at an April 2016 follow-up appointment, Dr. Gendich observed that the claimant presented as alert and oriented with normal memory and good judgment (Ex. B14F/2).
>
> Despite this lack of recent treatment, the claimant testified at his August 2016 hearing that he was continuing to experience migraine headaches five to six times per year, lesser headaches two times per week, and episodes of vertigo six to eight times per month. The claimant further testified that he was continuing to take Valium to treat his symptoms of vertigo. He has also noted that this medication causes side effects of drowsiness (See Ex. B2E/5; B6E/3; B10E; B12F; B15F).

(PageID.66-69).

## II.        Medical Opinion Evidence

Two of Plaintiff's treating physicians opined that Plaintiff was impaired to a greater extent than the ALJ recognized. For example, Dr. Stansby reported that during an 8-hour workday, Plaintiff can sit for only 2 hours and can stand/walk for less than 1 hour. (PageID.455). Dr. Stansby also reported that Plaintiff would need to rest for 15 minutes every 2 hours during the workday. (PageID.456). Dr. Gendich reported that during an 8-hour workday, Plaintiff can sit and stand/walk for less than 1 hour each. (PageID.529). The doctor also reported that Plaintiff can "never" lift or carry any amount of weight. (PageID.529). The doctor further reported that Plaintiff is incapable of performing any reaching, bending, handling, or fingering activities. (PageID.530). Dr. Gendich reported that the limitations she articulated "date back to 2012." (PageID.573). The ALJ, however, afforded "little weight" to these opinions. Plaintiff argues that he is entitled to relief on the ground that the ALJ's rationale for discounting his treating physician's opinions is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).   Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.   *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such.   *Id.* at 376.   In doing so, the ALJ considers the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.   *Id.* (citing 20 C.F.R. § 404.1527).   While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment.   *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

As the ALJ observed, neither doctors' contemporaneous treatment notes report findings consistent with or supporting the limitations noted above.   (PageID.460-70, 497-99, 535-53, 581-82).   As courts recognize, the failure by care providers to contemporaneously document disabling limitations undermines later assertions that such limitations were, in fact, present.   *See, e.g., Curler v. Commissioner of Social Security*, 561 Fed. Appx. 464, 473 (6th Cir., Apr. 1, 2014) ("had the severity of [the claimant's] back pain and lupus-induced fatigue and headaches truly precluded all employment, the medical records would have documented [findings consistent with such, as well as] more aggressive treatment or more urgent complaints").

As the ALJ noted, the opinions expressed by Dr. Stansby and Dr. Gendich are inconsistent with the results of objective medical testing and Plaintiff's treatment history. The ALJ further noted that the doctors' opinions were inconsistent with Plaintiff's reported activities, including his testimony that he can lift his 40 pound daughter (PageID.95-96). The Court is also not persuaded by Plaintiff's argument that the ALJ improperly "played doctor" in this matter. There exists a clear distinction between an ALJ making independent findings regarding a claimant's medical impairments and simply noting the lack of evidence to support an opinion rendered by one of the claimant's care providers. In sum, the ALJ articulated good reasons, supported by substantial evidence, for discounting Dr. Stansby's and Dr. Gendich's opinions. Accordingly, this argument is rejected.

### III. Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that he is limited to a greater extent than the ALJ recognized. For example, Plaintiff testified that if he lifts even 5 pounds his shoulder "feels like it's going to come out of the socket." (PageID.115-16). Plaintiff also reported that he is unable to sit or be on his feet for very long and that, as a result, he often has to just lay down. (PageID.103-04, 112-14). Plaintiff reported that he often experiences migraine headaches which force him to "lay down for a couple of hours." (PageID.110). Plaintiff also reported that his medications cause him to experience work-preclusive side effects. (PageID.113-14). The ALJ discounted Plaintiff's subjective allegations on the ground that such were inconsistent with the medical evidence. Plaintiff argues that he is entitled to relief because the ALJ's decision in this regard is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974

(6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.

First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities. *Id.* at *4-9.[2]

As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

---

[2] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. However, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony").  It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).  As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to assess a claimant's subjective allegations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007).  Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.  Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

In support of his decision discounting Plaintiff's subjective allegations, the ALJ noted, in part, as follows:

> In reviewing the claimant's statements, the undersigned first reiterates that the objective medical studies and clinical examination

> findings do not fully corroborate the claimant's alleged symptoms and limitations. For example, despite the claimant's allegations of significant joint pain, frequent headaches, and regular episodes of vertigo, the record reveals that he has attended relatively infrequent medical appointments with his primary care providers to address these conditions. Nevertheless, the claimant has also reported that his symptoms have improved, at least somewhat, with treatment and medication usage, as discussed above.
>
> The evidence raises other questions about the claimant's allegations. Specifically, the record does not suggest that the claimant has pursued any referrals to specialists, such as an orthopedic surgeon or a neurologist, for further evaluation and treatment of his reported symptoms during the period currently under consideration. Indeed, the record also reveals significant gaps in the claimant's history of treatment, including a period of approximately one-and-a-half years from his alleged onset date in July 2012 through February 2014 when the claimant only sought treatment for his allegedly disabling impairments at an emergency department visit and follow-up appointment with his primary care provider in June 2013. This history of limited treatment suggests that the claimant's impairments may not be as limiting as he has generally alleged.

(PageID.69-70).

The ALJ's observations and conclusions are consistent with the administrative record. In sum, the ALJ's decision to discount Plaintiff's subjective allegations complies with the relevant legal standard and is supported by substantial evidence. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                Respectfully submitted,

Date: November 27, 2018                      /s/ Ellen S. Carmody
                                                ELLEN S. CARMODY
                                                United States Magistrate Judge